# EXHIBIT B

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Governor Jesse Ventura,
a/k/a James G. Janos,

Civil No. 12-0472 (RHK/JJG)

Plaintiff,

v.

Chris Kyle,

Defendant.

## PLAINTIFF'S OBJECTIONS AND RESPONSES TO DEFENDANT'S INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

TO: CHRIS KYLE, defendant above-named, and his attorneys of record, JOHN P. BORGER and LEITA WALKER, FAEGRE BAKER DANIELS LLP, 90 South Seventh Street, Suite 2200, Minneapolis, Minnesota 55402.

## PRELIMINARY STATEMENT AND GENERAL OBJECTIONS

1.      Defendant Governor Jesse Ventura, a/k/a James G. Janos ("Governor Ventura" or "Plaintiff") objects to Defendant's First Set of Discovery Requests (the "Requests"), and to the definitions and instructions incorporated therein, to the extent that they require Plaintiff to provide information or documents that are not within Plaintiff's possession, or are not obtainable by Plaintiff through reasonable and good faith inquiry into Plaintiff's records. In responding to these Requests, Plaintiff has attempted to give undefined words their usual, commonly understood meanings.

2.      Plaintiff objects to these Requests to the extent they seek information that is irrelevant, immaterial, or not reasonably calculated to lead to the discovery of admissible evidence.

3.      Plaintiff objects to these Requests to the extent they seek information that is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive.

4.      Plaintiff objects to each Request insofar as it seeks a response beyond that required by the Federal Rules of Civil Procedure.

5.      Plaintiff objects to each Request to the extent that it purports to seek documents and disclosure of information protected by the attorney/client privilege, the work product doctrine, or any other applicable privilege. Plaintiff objects to each Request to the extent that it purports to seek documents and information that are immune from discovery under the Federal Rules of Civil Procedure.

6.      Plaintiff further states that an agreement to produce is not a representation that responsive documents exist.

7.      Plaintiff reserves the right, but does not assume any duty beyond that imposed by the Federal Rules of Civil Procedure, to amend the following responses if and when new or more accurate or complete information becomes available or is otherwise discovered. Furthermore, Plaintiff makes these responses without prejudice to Plaintiff's right to rely at trial on subsequently discovered information, information inadvertently omitted as a result of mistake, error, oversight, or information intentionally withheld under a good faith interpretation of the governing rules.

Plaintiff incorporates the above Preliminary Statement and General Objections into each and every specific response below.

## INTERROGATORIES

**INTERROGATORY NO 1:** State each address at which you have resided since January 1, 2003, state the dates during which you resided at each address, identify each person residing with you at each address, and identify each of your principal businesses and employers and sources of income since January 1, 2003.

## ANSWER:

Plaintiffs responds to this Interrogatory as follows:

    1993-2002
    9950 Brockton Lane
    Maple Grove, MN 55369

Governor Ventura, Terry Janos, Tyrel Janos and Jade Janos resided at the above address.

    January 20, 1999 - January 20, 2003
    Governor's Mansion
    Summit Avenue
    St. Paul, MN

Governor Ventura, Terry Janos, Tyrel Janos and Jade Janos resided at the above address.

-2-

2003-present
(current Minnesota address will be disclosed subject to a protective order)

Governor Ventura and Terry Janos reside at the above address.

2006-present
(current foreign address will be disclosed subject to a protective order)

Governor Ventura and Terry Janos reside at the above address.

Governor Ventura's principal employer from 1999-January 2003 was the state of Minnesota. During this period of time Governor Ventura also earned income as an author, television sports commentator for the XFL, and as an independent contractor to World Wrestling Entertainment, Inc. From 2003 to the present Governor Ventura has variously been employed by MSNBC as the host of *Jesse Ventura's America*, as a Teaching Fellow at Harvard University's Kennedy School of Government, and as the host of TruTv's *Conspiracy Theory*. Since 2003 Governor Ventura has also authored several books, been a paid spokesperson, made numerous national television appearances and has acted in several films.

**INTERROGATORY NO 2:** Provide a detailed, minute-by-minute/hour-by-hour account of your activities and whereabouts on October 12 and October 13, 2006, and identify each other person who was present with you during that period.

**ANSWER:**

Plaintiff objects to this Interrogatory on the grounds that it is impossible for him to

provide a minute-by-minute/hour-by-hour account of his activities and whereabouts on October

12 and October 13, 2006, and to identify each other person who was present with him during that

period.

Subject to and without waiving the foregoing objection, Governor Ventura responds that,

to the best of his recollection, he flew to California on Thursday night, October 12, 2006, rented

a car at the airport, and drove to the Loews Coronado Bay hotel, for the purpose of attending the

BUD/S Class 258 graduation ceremony scheduled for the following day. Governor Ventura

graduated with BUD/S Class 58, and it is tradition for class members to attend the graduation

- 3 -

ceremonies for each "hundredth anniversary" of their respective classes. He also attended Class 158's graduation from BUD/S.

On Friday, October 13, 2006, Governor Ventura attended the BUD/S Class 258 graduation ceremonies at approximately 1:00 or 2:00 p.m., where he sat in the audience. Following the graduation, he went to McP's Irish Pub at around 5:00 p.m. He sat at a table on the outdoor patio with William and Charlene DeWitt, Mike Gotchey and Mike Seidler, where they ate dinner and engaged in conversation. Plaintiff saw a number of younger SEALs at McP's who had been at a funeral earlier in the day, and who appeared to be drinking heavily.

Governor Ventura was on the patio for the duration of his time at McP's, only going inside the bar to use the restroom. While at McP's many people came up to Governor Ventura's table to talk, but he did not know them and cannot recall their names. After several hours of conversation with the friends who were seated with him, Governor Ventura drove back to his hotel, where he stayed for the night. He flew home to Minnesota on either Saturday, October 14 or Sunday, October 15, 2006.

Plaintiff does not recall any verbal or physical confrontation with Defendant or anyone else at McP's. Nor does he recall seeing any police officers at or around McP's the night of October 13, 2006. The "incident" reported by Defendant that is the subject of this lawsuit did not happen.

**INTERROGATORY NO. 3:** Identify all witnesses whom you expect to call as experts to give opinion testimony in the trial of this matter, including the following:

(a) The identity of the witness(es)' employer or the organization with which he or she is associated in any professional capacity;

(b) A summary of the witness(es)' qualifications within the field in which he or she is expected to testify;

(c) The substance of the testimony witness(es) is expected to give;

      (d)     Whether such opinions have been reduced to writing; and,

      (e)     The dates of all reports, both oral and written, rendered by such expert.

## ANSWER:

Plaintiff objects to this Interrogatory on the ground that it seeks information beyond that which Minn. R. Civ. P. 26.02 and 33 require him to provide, including but not limited to the work product and mental impressions of counsel. Subject to and without waiving the foregoing objection, Plaintiff responds that he has not yet determined which expert witness(es) he intends to call at any trial, hearing or other proceeding in this matter. This response will be supplemented as required by the applicable rules and the Court's Pretrial Scheduling Order.

**INTERROGATORY NO. 4:** Identify each person you will or may call as a witness at the trial in this matter who is not an expert, and describe the area of knowledge of each such person as it relates to this action.

## ANSWER:

Plaintiff objects to this Interrogatory on the ground that it seeks information beyond that which Minn. R. Civ. P. 26.02 and 33 require him to provide, including but not limited to the work product and mental impressions of counsel. Plaintiff further objects to this Interrogatory on the ground that Plaintiff has not yet determined which witness(es) he will or may call at trial in this matter. This response will be supplemented as required by the applicable rules and the Court's Pretrial Scheduling Order.

Subject to and without waiving the foregoing objections, Plaintiff responds that he may call the following individuals as witnesses:

      1.     Governor Jesse Ventura. Plaintiff has knowledge of the facts relating to the claims and/or defenses of the parties to this matter.

-5-

2.    Terry Janos. Ms. Janos is Plaintiff's wife, and has knowledge of the facts relating

to the claims and/or defenses of the parties to this matter.

3.    Tyrel Janos. Mr. Janos is Plaintiff's son, and has knowledge of the facts relating

to the claims and/or defenses of the parties to this matter.

4.    William DeWitt. Mr. DeWitt is a former Navy SEAL and BUD/S classmate of

Plaintiff, and has knowledge of the facts regarding the alleged incident at McP's Irish Pub.

5.    Charlene DeWitt. Mrs. DeWitt is the wife of William DeWitt. She has

knowledge of the facts regarding the alleged incident at McP's Irish Pub.

6.    Mike Gotchey. Mr. Gotchey is a former Navy SEAL and BUD/S classmate of

Plaintiff, and has knowledge of the facts regarding the alleged incident at McP's Irish Pub.

7.    Mike Seidler. Mr. Seidler is a former Navy SEAL and BUD/S classmate of

Plaintiff, and has knowledge of the facts regarding the alleged incident at McP's Irish Pub.

**INTERROGATORY NO. 5:** Identify all evidence that you allege supports your contention in
Paragraph 19 of the Complaint that "The quoted passage from American Sniper attached hereto
as Exhibit A contains matters of description, facts and circumstances for readers to infer that
Kyle was referring to Governor Ventura."

## ANSWER:

The quoted passage from *American Sniper* attached to the Complaint as Exhibit A

contains the following matters of description, facts and circumstances sufficient for readers to

infer that Kyle was referring to Plaintiff:

1.    The subject is referred to as "Scruff Face," implying that he has unkempt facial

hair. Governor Ventura has appeared on his television program and in television and other news

media wearing a long, dark braided goatee and other unique facial hair that may be described as

"scruffy."

- 6 -

2.      The subject is described as an "older" celebrity.  At the time, Governor Ventura was 55 years old, and was well-known to the public as a politician, speaker, actor, author and wrestler, *i.e.*, a "celebrity."

3.      The subject is described as a former UDT / SEAL who served during the Vietnam war.  It is widely known that Governor Ventura is a former UDT / SEAL who served during the Vietnam war, as he has spoken frequently and publicly about his military background and has described his military service in the best-selling book, "*I Ain't Got Time to Bleed.*"

4.      The author commented that ". . . most people seem to believe he was a SEAL.  As far as I know, he was in the service during the Vietnam conflict but not actually in the war."  The quoted passage implies that there is some question as to whether the subject was in the SEAL teams, and whether he actually served in combat.  Governor Ventura's political opponents have frequently and publicly questioned whether he has the right to claim that he was a SEAL, and whether he served in combat during the Vietnam war.

5.      The author described the subject as "holding court with some of his buddies." Governor Ventura is often-times the center of attention at gatherings, and he is well-known for his willingness to talk on a variety of subjects, *i.e.*, "holding court."

6.      The author claimed that the subject was of the opinion that the United States was involved in Iraq only because "Bush wanted to show up his father."  Governor Ventura has frequently and publicly expressed similar opinions.

7.      The subject is described as having a winter home in Baja California (Mexico).  It is widely known that Governor Ventura has a winter home in Baja California, Mexico.

8.      The subject is described as being opposed to the war in Iraq.  Governor Ventura has spoken frequently and publicly about his opposition to the war in Iraq.

9.    The subject is described as one who believes that 9/11 was a "conspiracy."

Governor Ventura has spoken frequently and publicly about 9/11, and has voiced his opinion that

facts and evidence regarding the events of that date have been suppressed and/or misrepresented

by the government. Governor Ventura also hosts a television show titled "*Conspiracy Theory.*"

10.    The subject is described as having been the speaker at BUD/S graduation

ceremonies. Governor Ventura has been the speaker at BUD/S graduation ceremonies.

11.    In television, radio and print interviews intended to promote the sale of *American*

*Sniper*, all of which were published nationally and in the State of Minnesota in January 2012,

Kyle has confirmed that the quoted references in his book were intended to and do refer to

Plaintiff.

**INTERROGATORY NO. 6:** Identify each person who has stated or otherwise indicated to you that he/she read the passage from the Book quoted in Exhibit A to the Complaint and that he/she inferred from what he/she read that "Scruff Face" referred to you.

**ANSWER:**

Plaintiff objects to this Interrogatory on the grounds that it is overly broad, unduly

burdensome, and requests information beyond that which the Minnesota Rules of Civil

Procedure require. Plaintiff further objects to this Interrogatory on the ground that it seeks

information beyond that which Minn. R. Civ. P. 26.02 and 33 require him to provide, including

but not limited to the work product and mental impressions of counsel.

Subject to and without waiving the foregoing objections, Governor Ventura responds that

*American Sniper* was released for publication in January 2012. Contemporaneously with the

book's release, Kyle participated in a media promotional campaign in which he confirmed that

the "Scruff Face" sub-chapter was written about Governor Ventura. Kyle's publicly stated and

recorded comments garnered national and international attention in the television, print and

- 8 -

internet news media and, by his own admission, attracted more publicity for the book than any

other subject matter. Consequently, by the time the public became aware of Kyle's book, there

was no longer any question that "Scruff Face" was Kyle's pseudonym for Plaintiff. To date,

Governor Ventura has not met anyone who didn't already know the "Scruff Face" sub-chapter

was written about him before they read the book.

**INTERROGATORY NO. 7:** As to each element of each of the Published Statements that you
contend was false and defamatory:

     (a)    Describe in detail the factual basis for your claim that the statement element was
false;

     (b)    Describe in detail the factual basis for your claim that the statement element was
defamatory;

     (c)    Describe in detail the factual basis for your claim that you have sustained
damages as a result of the publication of this statement element (including the
nature and extent of any damages and the relationship between this statement
element and your claimed damages);

     (d)    Identify each witness and document relating to the claim of damages; and

     (e)    Describe in detail each effort you made to mitigate damages allegedly resulting
from the publication of this statement element and identify each person making
such efforts on your behalf.

**ANSWER:**

     Plaintiff objects to this Interrogatory on the ground that it seeks information beyond that

which Minn. R. Civ. P. 26.02 and 33 require him to provide, including but not limited to the

work product and mental impressions of counsel. Subject to and without waiving the foregoing

the objection, Plaintiff responds that:

     **(a)**    Statements published in the book, and published and re-published by Kyle and

others in television, print and internet news media and commentary are false because:

1.    Governor Ventura never said "he hates America" and he does not, in fact "hate America."

2.    Governor Ventura never said "[Navy SEALs] deserve to lose a few" and he does not, in fact, hold the opinion that any members of the Naval special forces unit known as the SEALS, or any American servicemen or women deserve to lose their lives while serving their country. Nor has Governor Ventura ever expressed or implied, in Kyle's presence or anywhere else, that he wished any harm to come to any American troops, or to Navy SEALs in particular.

3.    Governor Ventura never said "[Navy SEALs] deserve to lose a few guys" and he does not, in fact, hold the opinion that any members of the Naval special forces unit known as the SEALs, or any American servicemen or women deserve to lose their lives while serving their country. Nor has Governor Ventura ever expressed or implied, in Kyle's presence or anywhere else, that he wished any harm to come to any American troops, or to Navy SEALs in particular.

4.    Governor Ventura never said "ya'll [Navy SEALs] deserve to lose a few guys" and he does not, in fact, hold the opinion that any members of the Naval special forces unit known as the SEALS, or any American servicemen or women deserve to lose their lives while serving their country. Nor has Governor Ventura ever expressed or implied, in Kyle's presence or anywhere else, that he wished any harm to come to any American troops, or to Navy SEALs in particular.

5.    Governor Ventura never said "[Navy SEALs] were killing innocent people" and he does not, in fact, hold the opinion that members of the Naval special forces unit known as the SEALs kill innocent people. Nor has Governor Ventura ever expressed or implied, in Kyle's presence or anywhere else, that Navy SEALs kill innocent people.

-10-

6.    Governor Ventura never said "[Navy SEALs] were murderers" and he does not, in fact, hold the opinion that members of the Naval special forces unit known as the SEALs are murderers. Nor has Governor Ventura ever expressed or implied, in Kyle's presence or anywhere else, that Navy SEALS are murders.

7.    Governor Ventura never said "We were doing the wrong thing, killing men and women and children and murdering" and he does not, in fact, hold the opinion that members of the Naval special forces unit known as the SEALs are murders. Nor has Governor Ventura ever expressed or implied, in Kyle's presence or anywhere else, that Navy SEALs are murderers.

8.    Governor Ventura did not take part in any incidents involving Kyle in which "[he] bowed up as if to belt [Kyle]." The incident, as described by Kyle, is a fabrication.

9.    Governor Ventura did not take part in any incidents involving Kyle in which "[he] bowed up again." The incident, as described by Kyle, is a fabrication.

10.    Governor Ventura did not take part in any incidents involving Kyle in which "[Plaintiff] swung." The incident, as described by Kyle, is a fabrication.

11.    Governor Ventura did not take part in any incidents involving Kyle in which "Stuff happened. Scruff Face ended up on the floor." The incident, as described by Kyle, is a fabrication.

12.    Governor Ventura did not "show[] up at the BUD/S graduation with a black eye." The BUD/S graduation occurred earlier in the day and before he went to McP's. The incident, as described by Kyle, is a fabrication.

13.    Governor Ventura did not take part in any incidents involving Kyle in which "[Kyle] was in a bar fight with Jesse Ventura," "[Kyle] punched him . . . in the face," "he went

- 11 -

down," "[Kyle] knocked him down," "[Kyle] popped him," or "he went down." The incident, as described by Kyle, is a fabrication.

14.     Governor Ventura never threatened or assaulted Kyle. The incident, as described by Kyle, is a fabrication.

15.     Kyle never physically assaulted, battered or punched Governor Ventura. The incident, as described by Kyle, is a fabrication.

16.     Kyle knew, at the time he wrote *American Sniper*, and at the time he gave television, radio and print interviews to promote his book, that that his alleged 2006 altercation with Governor Ventura had never occurred, that Governor Ventura had not made any of the statements attributed to him, and that the entire story about a confrontation with and physical assault and battery of Governor Ventura was false and defamatory.

**(b)**     Defendant's false statements are libelous, slanderous and defamatory on their face. Governor Ventura comes from a military family: his father served in the United States military during World War II and earned six Bronze Battle Stars; his mother served in the United States military during World War II, as nurse stationed in North Africa; and his brother served in the United States military as a Navy SEAL during the Vietnam war. Governor Ventura is very proud of his, and his family's military service, and he has nothing but the highest regard for veterans of, and those currently serving in the United States military. Governor Ventura's service in the Naval Special Forces Underwater Demolition / SEAL Teams was a defining experience in his life, and he has always believed that those with whom he served, as well as those who preceded and followed him, deserve his and the nation's utmost respect and deepest gratitude.

- 12 -

As a member of the military, Governor Ventura took an oath to "support and defend the Constitution of the United States against all enemies, foreign and domestic," and to "bear true faith and allegiance to the same." As Governor of the State of Minnesota, Governor Ventura took an oath "to support the Constitution of the United States and of this state and to discharge faithfully the duties of his office to the best of his judgment and ability," and he was the "commander-in-chief of the military and naval forces," vested with the power to "call them out to execute the laws, suppress insurrection and repel invasion." Minn. Const., art. 5, Section 6, and art. 5, Section 3. Governor Ventura has always taken his oaths to defend and protect the Constitution of the United States from all enemies very seriously, and he has always considered it a great honor to have had the privilege of serving his country, first, in the military, and, second, as the Governor of Minnesota.

Governor Ventura has, over a period of many years, maintained close friendships with his former colleagues in the Naval Special Forces Underwater Demolition / SEAL Teams, and he has on several occasions since his own discharge from the military attended and spoken at Navy SEAL graduation and other ceremonies, where he has always been treated with dignity and respect. Although Governor Ventura has liberally exercised his First Amendment right to criticize government policy, and has been publicly opposed to the war in Iraq, he has always supported America's troops, and has never, and would never wish them any harm.

Governor Ventura is so fiercely proud of his UDT / SEAL service that, prior to publication of the defamatory statements, and post-Iraq war, he got his first tattoo ever -- the SEAL Trident, also known as the "Budweiser." He also has that symbol painted on his custom motorcycle, and he owns and wears more than 50 T-shirts emblazoned with the SEAL Trident,

- 13 -

including frequently wearing them on national television. In addition, Governor Ventura's official portrait at the Minnesota State Capitol includes a lapel pin with the SEAL Trident.

Knowing that the alleged statements he attributes to Governor Ventura were never made, and that the alleged assault and battery incident involving Governor Ventura had never occurred, for the purpose of gaining notoriety and generating publicity for his *American Sniper* book, and thereby furthering his own economic gain, and/or for other reasons presently unknown, Kyle knowingly, intentionally and maliciously published the false and defamatory statements of and concerning Governor Ventura as set forth above. By falsely claiming that Governor Ventura said United States Navy SEALs deserve to die, Kyle intended to inflict a vicious, deliberate and calculated assault on Governor Ventura's character, honor and reputation, and to turn the SEAL and military community, and Americans in general, against Governor Ventura and to cause them to have contempt, scorn, disgust and hatred for him, and to hold him in the lowest possible regard. By knowingly, intentionally and maliciously publishing false and defamatory statements of and concerning Governor Ventura, Kyle intended to, and did defame Governor Ventura and harm his reputation and standing in the community, including but not limited to the small, fraternal community of UDT/SEAL veterans and active duty personnel, and the broader communities of all military personnel and their families, and all patriotic Americans. Kyle's false and defamatory statements have been made orally, in writing, and have been embodied in audio and visual recordings, and said false and defamatory statements have been widely and repeatedly published to third parties, including third parties in the State of Minnesota, via cable network television, satellite radio, hard-copy and electronic print publications, and Internet video and print publications.

- 14 -

(c)    As a direct result of Kyle's publication of knowingly, intentionally and
maliciously false and defamatory statements, Governor Ventura's reputation and standing in the
community, including Minnesota and the United States, has been harmed, he has been
embarrassed and humiliated, and he has suffered emotional distress. Among other things,
Governor Ventura can no longer face the prospect of attending future UDT / SEAL reunions, or
of associating with those in the UDT / SEAL community where he used to feel that he belonged
and was welcomed and respected. He now feels betrayed by "one of his own." Rarely does a
day go by when Governor Ventura does not think about Kyle's vicious statements, why Kyle felt
compelled to make them, and what those who hear and read what Kyle has said must now think
of him. He frequently talks about it with his wife, and has to watch her cry when the subject
comes up. Governor Ventura has suffered indescribable stress and anxiety, and he dwells upon
the ramifications of the Published Statements on a daily basis, which causes him severe
emotional distress.

Kyle's publication of knowingly, intentionally and maliciously false and defamatory
statements has negatively affected, and will continue to negatively affect Governor Ventura in
connection with his businesses and professions, including but not limited to his current and
future opportunities as a political candidate, political commentator, author, speaker, television
host and personality, and all other commercial endeavors that involve exploitation of his name,
likeness and public persona. Among other things, Governor Ventura has not received any new
business offers since January 2012, when Kyle's defamatory statements were published.
Although *Conspiracy Theory* Season 3 has been filmed and edited, and was originally scheduled
to air in February 2012, it has not, to date, been put on the air. Prior to Kyle's defamatory
statements, every book Governor Ventura has written has been a best seller. Governor Ventura

has authored a new book that is currently being released, and it remains to be seen how Kyle's

defamatory statements will affect sales.

(d)    Persons with knowledge of damages include Governor Ventura, Terry Janos and

Tyrel Janos. Discovery is continuing.

(e)    Efforts to mitigate damages include immediately issuing a statement to the effect

that Kyle's defamatory statements are not true, demanding a retraction, and filing this lawsuit.

The persons involved in these mitigation efforts are Governor Ventura, Tyrel Ventura and

Governor Ventura's attorneys.

**INTERROGATORY NO. 8:** Identify the person(s) best able to testify in discovery concerning
the damages you allege you have sustained as a result of the Published Statements. As to each
such person, state in detail the substance of such knowledge.

**ANSWER:**

Plaintiff objects to this Interrogatory on the ground that it seeks information beyond that

which Minn. R. Civ. P. 26.02 and 33 require him to provide, including but not limited to the

work product and mental impressions of counsel. Subject to and without waiving the foregoing

objection, Plaintiff responds that he has not yet determined which person(s) are best able to

testify in discovery concerning the damages he sustained as a result of the Published Statements.

Plaintiff further responds that the following persons are able to testify about damages:

1.    Governor Jesse Ventura.

2.    Terry Janos.

3.    Tyrel Janos.

See also response to Interrogatory No. 7, above. Discovery is continuing.

**INTERROGATORY NO. 9:** Identify each person who has stated or otherwise indicated to you
that he read, heard, or otherwise became aware of each or any of the Published Statements; state
the date(s) on which each person mentioned each or any of the Published Statements to you;

- 16 -

describe each such person's relationship to you (e.g., family member, friend, neighbor, classmate, etc.) and state when each such relationship began; and state the substance of that person's communication(s) with you concerning each or any of the Published Statements.

## ANSWER:

Plaintiff objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome. Plaintiff further objects to this Interrogatory on the ground that it seeks information beyond that which Minn. R. Civ. P. 26.02 and 33 require him to provide, including but not limited to the work product and mental impressions of counsel.

Subject to and without waiving the foregoing objections, Governor Ventura responds that he and his wife have been out of the country since Defendant's book was released in January 2012, living in a remote area with no neighbors, although a man did approach Governor Ventura in a rural Mexican bar, shortly after *American Sniper* was released, and said he had heard about Defendant's statements and asked if they were true. Governor Ventura's wife, Terry Janos, and his son, Tyrel Janos became aware of the defamatory statements at or about the time they were published, as did the individuals identified in response to Interrogatory No. 2, above.

See also response to Interrogatory No. 7, above. Discovery is continuing.

**INTERROGATORY NO. 10:** Identify each person who has stated or otherwise indicated to you that he/she thought less of you, or had altered his/her opinion of you in any negative fashion, as a result of reading or otherwise become aware of each or any statement element in any of the Published Statements; state the date(s) on which he/she discussed with you or otherwise indicated that he/she thought less of you, or had altered his/her Opinion of you in any negative fashion, as a result of reading or otherwise becoming aware of each or any statement element in any of the Published Statements; describe that person's relationship(s) to you (e.g., family member, friend, neighbor, classmate, etc.) and state when each such relationship began; and state the substance of that person's communication(s) with you concerning the Published Statements or his/her indication that he/she thought less of you, or had altered his/her opinion of you in any negative fashion, as a result of reading or otherwise becoming aware of each or any of the Published Statements.

## ANSWER:

- 17 -

Plaintiff objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and requests information beyond that which the Minnesota Rules of Civil Procedure require him to provide.

Subject to and without waiving the foregoing objection, Governor Ventura responds that he has read innumerable comments to online articles in which individuals have written horribly critical and demeaning things about him due to Defendant's Published Statements, and has read the "witness affidavits" produced by Defendant which include similar invective. A google.com search of "Ventura" and "Chris Kyle" generates close to 91,000 results, and within those results are a multitude of commentaries, blog entries, and other publications in which the authors voice their scorn for Governor Ventura in response to the Published Statements. Furthermore, the *Opie & Anthony Show* disc jockeys and FOX News television program hosts have lambasted Governor Ventura about the Published Statements, and have called into question his patriotism and standing in society.

Discovery is continuing.

**INTERROGATORY NO. 11:** With respect to the allegation in Paragraph 42 of your Complaint that as a "direct result" of the Published Statements, your "reputation and standing in the community... has been harmed," you have been "embarrassed and humiliated," and you have "suffered emotional distress":

    (a)    Identify each person who has stated or otherwise indicated to you that he/she held you in a position of ridicule, contempt, distrust, or disgrace or thought less of you or altered his/her opinion of you in any negative fashion; state the date(s) on which he/she discussed with you or otherwise indicated that he/she thought of you in such fashion as a result of reading or otherwise becoming aware of each or any statement element of any of the Published Statements; describe that person's relationship(s) to you (e.g., family member, friend, neighbor, classmate, etc.) and state when each such relationship began; and state the substance of that person's communication(s) with you concerning the Published Statements or his/her indication that he/she thought of you in such fashion as a result of reading or otherwise becoming aware of each or any of the Published Statements.

(b)  Describe in detail the injury to your reputation and the mental and emotional distress that you allege you have felt as a result of each statement element of any of the Published Statements, including the nature of the distress, the times and duration of the distress, and any witnesses to the distress.

(c)  Identify all health care providers who have consulted with you, advised you, or treated you with respect to the alleged mental and emotional distress; state the dates and substance of all communications and treatments with respect to such health care providers.

## ANSWER:

Plaintiff objects to this Interrogatory on the grounds that it is overly broad, unduly

burdensome, and requests information beyond that which the Minnesota Rules of Civil

Procedure require him to provide. Plaintiff further objects on the ground that this Interrogatory

is cumulative and repetitive.

Subject to and without waiving the foregoing objections, Plaintiff responds: See

responses to Interrogatory Nos. 7, 8, 9 and 10, above.

**INTERROGATORY NO. 12:**  With respect to the allegation in Paragraph 43 of your Complaint that the Published Statements have "negatively affected and will continue to negatively affect Governor Ventura in connection with his business and professions, including but not limited to his current and future opportunities as a political candidate, political commentator, author, speaker, television host and personality, and all other commercial endeavors that involve exploitation of his name, likeness, and public persona":

(a)  Describe in detail all business and professional opportunities that you believe you have been or may be unable to realize as a result of the Published Statements, including the nature of the opportunity, the progress you had made toward realizing the opportunity prior to January 2012, and any monetary benefit you expected to gain from the opportunity.

(b)  Identify each person who has stated or otherwise indicated to you that, because of the Published Statements, one or more of the business or professional opportunities described in (a) is foreclosed and no longer available to you; state the date(s) on which he/she discussed with you or otherwise indicated that the opportunity was no longer available; describe that person's relationship(s) to you (e.g., family member, friend, neighbor, classmate, etc.) and state when each such relationship began; and state the substance of that person's communication(s) with you concerning the Published Statements.

- 19 -

## ANSWER:

Plaintiff objects to this Interrogatory on the grounds that it is overly broad, unduly

burdensome, and requests information beyond that which the Minnesota Rules of Civil

Procedure require him to provide. Plaintiff further objects on the ground that this Interrogatory

is cumulative and repetitive. Subject to and without waiving the foregoing objections, Plaintiff

responds: See responses to Interrogatory Nos. 7, 8, 9 and 10, above.

Plaintiff will supplement this response as discovery develops, and he reserves the right to

offer expert opinions as to the fact and amount of damages attributable to Defendant's

defamatory statements.

**INTERROGATORY NO. 13:** If you contend that Kyle made any admissions that are
admissible in this case, describe with particularity the admission, including the time, date, and
place of the admission, the identity of the person making the admission, the substance of the
admission, and identify all persons who have any knowledge or familiarity with the admission,
and describe the knowledge or information they possess.

## ANSWER:

Defendant made the following admission in the Rule 26(f) Report filed with the Court by

his attorneys: "Kyle repeatedly has commented that he believes too much publicity and attention

has been given to the incident involving Ventura and that he prefers to talk about the book itself

and not about Ventura." Discovery is continuing.

**INTERROGATORY NO 3:** Identify all health care providers who have consulted with you,
advised you, or treated you since February 1, 2003; state the dates and substance of all
communications and treatments with respect to such health care providers.

## ANSWER:

Plaintiff objects to this Interrogatory on the grounds that it is overly broad, unduly

burdensome, and requests information beyond that which the Minnesota Rules of Civil

Procedure require him to provide. Plaintiff further objects on the ground that this Interrogatory

is not reasonably calculated to lead to the discovery of relevant or admissible evidence. Subject to and without waiving the foregoing objections, Plaintiff responds that he has not yet consulted any medical providers concerning damages suffered as a result of Defendant's defamatory statements.

**INTERROGATORY NO. 15:** Identify each person participating in preparing answers to Defendant's discovery requests, and state the information provided by each.

### ANSWER:

Plaintiff objects to this Interrogatory on the ground that it seeks information beyond that which Minn. R. Civ. P. 26.02 and 33 require him to provide, including but not limited to the work product and mental impressions of counsel. Subject to and without waiving the foregoing objection, Plaintiff responds that the following persons participated in preparing answers to Defendant's discovery requests:

Governor Jesse Ventura and Terry Janos provided the factual information stated in these responses, and counsel assisted in preparation of these responses.

## REQUESTS FOR DOCUMENTS, STATEMENTS, AND THINGS

**REQUEST NO. 1:** Any and all documents relating to any type of damages you claim you have sustained as a result of the publication of the Published Statements.

### RESPONSE:

Plaintiff responds that non-privileged documents responsive to this request, to the extent they exist and can be located, will be produced for inspection and copying at a date, time and place to be mutually agreed. At this time, Plaintiff is unaware of any documents responsive to this request. Discovery is continuing.

**REQUEST NO. 2:** Any and all statements made by any person concerning the Published Statements or the subject matter of this lawsuit.

- 21 -

## RESPONSE:

Plaintiff responds that non-privileged documents responsive to this request, to the extent

they exist and can be located, will be produced for inspection and copying at a date, time and

place to be mutually agreed. At this time, Plaintiff is unaware of any documents responsive to

this request, other than the "witness statements" produced by Defendant. Discovery is

continuing.

**REQUEST NO. 3:** Your tax returns since tax year 2002.

## RESPONSE:

Plaintiff objects to this request on the ground that it seeks information beyond that which

Minn. R. Civ. P. 26.02, 34.01 and 34.02 require him to provide.

Subject to and without waiving the foregoing objection, Plaintiff responds that non-

privileged documents responsive to this request, to the extent they exist and can be located, will

be produced for inspection and copying at a date, time and place to be mutually agreed.

**REQUEST NO. 4:** Any and all photographs taken of you on October 11, October 12, October
13, or October 14, 2006.

## RESPONSE:

Plaintiff responds that non-privileged documents responsive to this request, to the extent

they exist and can be located, will be produced for inspection and copying at a date, time and

place to be mutually agreed. Plaintiff is aware that "reunion" photographs were taken, but does

not know who took them or who may possess them. Other than "reunion photographs," at this

time, Plaintiff is unaware of any documents responsive to this request. Discovery is continuing.

**REQUEST NO. 5:** Any and all documents relating to the altercation between you and Kyle
described in the Book.

## RESPONSE:

None.  The claimed "altercation" did not happen.

**REQUEST NO. 6:**  Any and all documents relating to any comments that any person has made on or after October 12, 2006, about the altercation between you and Kyle described in the book.

**RESPONSE:**

Plaintiff objects to this request on the ground that it seeks information beyond that which Minn. R. Civ. P. 26.02, 34.01 and 34.02 require him to provide, including but not limited to the work product and mental impressions of counsel, and on the grounds that the phrase "Any and all documents relating to any comments that any person has made on or after October 12, 2006, about the altercation" is vague, ambiguous, subject to multiple definitions and interpretations and does not describe the document or documents for which production is sought by category or with reasonable particularity.

Subject to and without waiving the foregoing objections, Plaintiff responds that non-privileged documents responsive to this request, to the extent they exist and can be located, will be produced for inspection and copying at a date, time and place to be mutually agreed.  At this time, Plaintiff is unaware of any documents responsive to this request.  Discovery is continuing.

**REQUEST NO. 7:**  Any and all documents relating to your activities and whereabouts on October 12 and October 13, 2006.

**RESPONSE:**

Plaintiff objects to this request on the ground that it seeks information beyond that which Minn. R. Civ. P. 26.02, 34.01 and 34.02 require him to provide, including but not limited to the work product and mental impressions of counsel, and on the grounds that the phrase "Any and all documents relating to your activities and whereabouts" is vague, ambiguous, subject to multiple definitions and interpretations and does not describe the document or documents for which production is sought by category or with reasonable particularity.

Subject to and without waiving the foregoing objections, Plaintiff responds that non-privileged documents responsive to this request, to the extent they exist and can be located, will be produced for inspection and copying at a date, time and place to be mutually agreed. At this time, Plaintiff is unaware of any documents responsive to this request. Discovery is continuing.

**REQUEST NO. 8:** Any and all expert reports prepared in this matter.

**RESPONSE:**

Plaintiff objects to this request on the ground that he has not yet determined which expert or experts may testify at any trial, hearing or other proceeding in this action. This response will be supplemented as required by the applicable rules and the Court's Pretrial Scheduling Order.

**REQUEST NO. 9:** Any and all documents containing or reflecting admissions you contend the Defendant has made in this matter.

**RESPONSE:**

Plaintiff responds that non-privileged documents responsive to this request, to the extent they exist and can be located, will be produced for inspection and copying at a date, time and place to be mutually agreed. Other than Defendant's Rule 26(f) Report, at this time, Plaintiff is unaware of any documents responsive to this request. Discovery is continuing.

**REQUEST NO. 10:** Any and all documents that support, contradict, or otherwise relate in any way to the subject matter of any of your answers to any of the interrogatories served by Defendant.

**RESPONSE:**

Plaintiff objects to this request on the grounds that it is overly broad, unduly burdensome, and requests information beyond that which the Minnesota Rules of Civil Procedure require, and on the grounds that this request is vague, ambiguous, subject to multiple definitions and interpretations and does not describe the document or documents for which production is sought by category or with reasonable particularity.

- 24 -

**REQUEST NO. 11:** Any and all medical reports, invoices, payments, and records relating to the "emotional distress" alleged in Paragraph 42 of your Complaint.

**RESPONSE:**

Plaintiff objects to this Request on the grounds that it is overly broad, unduly

burdensome, and requests information beyond that which the Minnesota Rules of Civil

Procedure require. Plaintiff further objects on the ground that this Request is not reasonably

calculated to lead to the discovery of relevant or admissible evidence. At this time, Plaintiff is

unaware of any documents responsive to this request. Discovery is continuing.

**REQUEST NO. 12:** Any and all documents that you have identified or referred to in your answers to Defendant's interrogatories, that refer to any matters requested in Defendant's interrogatories or any matters described or referred to in your answers to Defendant's interrogatories, or that you have reviewed or consulted in the course of preparing your answers to Defendant's interrogatories.

**RESPONSE:**

Plaintiff objects to this request on the ground that it seeks information beyond that which

Minn. R. Civ. P. 26.02, 34.01 and 34.02 require him to provide, including but not limited to the

work product and mental impressions of counsel.

Subject to and without waiving the foregoing objection, Plaintiff responds that non-

privileged documents responsive to this request, to the extent they exist and can be located, will

be produced for inspection and copying at a date, time and place to be mutually agreed.

**REQUEST NO. 13:** A sufficient number of completed and signed Authorization(s) for Disclosure of Health Information (several copies enclosed) so that we may obtain the release of all records of any and all health care providers (including psychiatrists and psychologists) who have provided treatment to you since February 1, 2003.

**RESPONSE:**

Plaintiff objects to this request on the ground that it seeks information beyond that which

Minn. R. Civ. P. 26.02, 34.01 and 34.02 require him to provide.

- 25 -

Jesse Ventura

Subscribed and sworn to before me
this _____ day of _____, 2012.


Notary Public

**AS TO OBJECTIONS:**

**HENSON & EFRON, P.A.**

Dated: June 12, 2012                    By _____

David Bradley Olsen, 197944
John N. Bisanz, Jr., 0389098
220 South Sixth Street, Suite 1800
Minneapolis, Minnesota 55402-4503
Telephone: 612-339-2500

Attorneys for Plaintiff

449792.DOC