## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Governor Jesse Ventura, a/k/a James
G. Janos,

Civ. No. 12-472 (RHK/AJB)

                                        Plaintiff,      **MEMORANDUM OPINION**
                                                        **AND ORDER**

v.

Chris Kyle,

                                        Defendant.

David Bradley Olsen, Court J. Anderson, John N. Bisanz, Jr., Henson & Efron, PA,
Minneapolis, Minnesota, for Plaintiff.

John P. Borger, Mary Andreleita Walker, Faegre Baker Daniels LLP, Minneapolis,
Minnesota, for Defendant.

### INTRODUCTION

This lawsuit arises from a passage in Defendant Chris Kyle's autobiography

describing an alleged bar fight he had with Plaintiff Jesse Ventura during a Navy SEAL's

wake.  In his book, Kyle writes that Ventura made offensive comments about the SEALs

and their service in the Iraq War, so Kyle punched him.  Ventura maintains the encounter

never happened and that Kyle fabricated it to help sell his book.  He commenced this

action against Kyle asserting claims for defamation, invasion of privacy/appropriation,

and unjust enrichment.  Kyle now moves for partial summary judgment.  For the reasons

that follow, the Court will deny Kyle's Motion.

## BACKGROUND

**The Parties**

Chris Kyle is a former Navy SEAL sniper and the author of an autobiography entitled American Sniper, the Autobiography of the Most Lethal Sniper in U.S. Military History, published in January 2012 and sold nationally.  (Borger Decl., Ex. A-2.)

Jessie Ventura is a well-known former professional wrestler and former Governor of Minnesota, who served as a member of the Navy Special Forces Underwater Demolition/SEAL Teams during the Vietnam War.

**Kyle's Story**

In his autobiography, Kyle wrote a subchapter, captioned "Punching Out Scruff Face," about an alleged encounter he had with Ventura in a California bar.  It reads as follows:

> AFTER THE FUNERAL WE WENT TO A LOCAL BAR FOR THE WAKE proper.
>
> As always, there were a bunch of different things going on at our favorite nightspot, including a small party for some older SEAL's and UDT members who were celebrating the anniversary of their graduation.  Among them was a celebrity I'll call Scruff Face.
>
> Scruff served in the military; most people seem to believe he was a SEAL.  As far as I know, he was in the service during the Vietnam conflict but not actually in the war.
>
> I was sitting there with Ryan and told him that Scruff was holding court with some of his buddies.
>
> "I'd really like to meet him," Ryan said.
>
> "Sure."  I got up and went over to Scruff and introduced myself.
>
> "Mr. Scruff Face, I have a young SEAL over here who's just come back from Iraq. He's been injured but he'd really like to meet you."
>
> Well, Scruff kind of blew us off.  Still, Ryan really wanted to meet him, so I brought him over. Scruff acted like he couldn't be bothered.
>
> *All right.*

We went back over to our side of the bar and had a few more drinks. In the meantime, Scruff started running his mouth about the war and everything and anything he could connect to it.  President Bush was an asshole.  We were only over there because Bush wanted to show up his father.  We were doing the wrong thing, killing men and women and children and murdering.

And on and on.  Scruff said he hates America and that's why he moved to Baja California. 9/11 was a conspiracy.

And on and on some more.

The guys were getting upset.  Finally, I went over and tried to get him to cool it.

"We're all here in mourning," I told him.  "Can you just cool it? Keep it down."

"You deserve to lose a few," he told me.  Then he bowed up as if to belt me.

I was uncharacteristically level-headed at that moment.

"Look," I told him, "why don't we just step away from each other and go on our way?"  Scruff bowed up again.  This time he swung.

Being level-headed and calm can last only so long.  I laid him out.

Tables flew.  Stuff happened.  Scruff Face ended up on the floor.

I left.

Quickly.

I have no way of knowing for sure, but rumor has it he showed up at the BUD/S graduation with a black eye.

(Borger Decl., Ex. A-2.)  Although he does not name Ventura in print, Kyle has

confirmed in television, radio, and print interviews that "Scruff Face" is Ventura.  (Kyle

Decl. ¶ 15.)  In early January 2012, Kyle appeared on the Opie & Anthony Show, a talk-

radio program, and the O'Reilly Factor, a talk show, retelling the above-quoted story

about Ventura, repeating Ventura's alleged statement, "You deserve to lose a few guys,"

mocking Ventura ("Yeah, I think he fell out of his wheelchair"), and detailing how he

punched Ventura and ran.  (Compl. Exs. B, C; Kyle Decl. ¶ 19.)  The story also appeared

on FOX News.  (Compl. Ex. D.)

Kyle maintains that "the events that happened in [the] book are true" and that "the essence of what was said is accurate."  (Borger Decl., Ex. A-2; Kyle Decl. ¶¶ 9–10.) Ventura acknowledges that he was at the bar on the night in question, but disavows the remainder of Kyle's story.  (Olsen Aff., Ex. 2, Ventura's Resp. to Interrog. Nos. 2, 7.)

**The Instant Action**

Ventura commenced this action in January 2012, alleging that Kyle fabricated the story and circulated it "for the purpose of gaining notoriety and generating publicity for his . . . book, and thereby furthering his own economic gain . . . ."  (Compl. ¶ 32.)  He asserts claims for defamation, appropriation/invasion of privacy, and unjust enrichment. (Compl. ¶¶ 35–51.)  Kyle now moves for summary judgment on the latter two claims.

Discovery is continuing and the parties have not yet been deposed, but each has produced sworn statements of persons present on the night in question to support their respective versions of the events.  (See Gotchey Aff., B. DeWitt Aff., and C. DeWitt Aff. in support of Ventura's version of events and Budinscak Decl., Dinnell Decl., Gassoff Decl., Kelly Decl., and Lacz Decl. in support of Kyle's version).  Kyle argues that summary judgment is appropriate at this early stage because Ventura's claims fail as a matter of law.  For the reasons below, the Court does not agree.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).  The moving party bears the burden of showing that the

material facts in the case are undisputed.  <u>Celotex</u>, 477 U.S. at 322; <u>Whisenhunt v. Sw. Bell Tel.</u>, 573 F.3d 565, 568 (8th Cir. 2009).  The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party.  <u>Weitz Co., LLC v. Lloyd's of London</u>, 574 F.3d 885, 892 (8th Cir. 2009); <u>Carraher v. Target Corp.</u>, 503 F.3d 714, 716 (8th Cir. 2007).  The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986); <u>Wingate v. Gage Cnty. Sch. Dist., No. 34</u>, 528 F.3d 1074, 1078–79 (8th Cir. 2008).

## ANALYSIS

### I.      Invasion of Privacy/Appropriation

In Count II of his Complaint, Ventura alleges that Kyle appropriated his name, image, and public persona by fabricating an encounter with him in order to sell more books.  Under Minnesota law,[1] a defendant is liable if he "'appropriates to his own use or benefit the name or likeness of another.'"  <u>Lake v. Wal-Mart Stores, Inc.</u>, 528 N.W.2d 231, 233 (Minn. 1998) (quoting Restatement (Second) of Torts § 652C).

Kyle argues that he is entitled to summary judgment because his statements about Ventura are protected by the First Amendment.  <u>See</u> <u>Zacchini v. Scripps-Howard Broad. Co.</u>, 433 U.S. 562 (1977) (applying First Amendment analysis to invasion-of-privacy

---

[1] Neither party contends that the Court's choice of law affects the outcome of the Motion. Accordingly, the Court applies Minnesota law.  <u>BBSerCo, Inc. v. Metrix Co.</u>, 324 F.3d 955, 960 n.3 (8th Cir. 2003) (law of forum state applies by default where parties do not raise choice-of-law issue).

claim); C.B.C. Distrib. & Mktg., Inc. v. Major League Baseball Advanced Media, L.P., 505 F.3d 818, 823–24 (8th Cir. 2007) (First Amendment privilege defeated right-of-publicity claim).  But this argument depends entirely on his own version of the facts and ignores Ventura's.  His statements are *not* protected by the First Amendment if they were knowingly false and defamatory, as Ventura claims.  See, e.g., First Nat'l Bank of Boston v. Bellotti, 435 U.S. 765, 776 (1978); N.Y. Times Co. v. Sullivan, 376 U.S. 254, 279–80 (1964); Garrison v. Louisiana, 379 U.S. 64, 73 (1964).  Because the parties do not agree whether Kyle's statements were true or false, the Court cannot determine whether the First Amendment protects them.

Kyle also argues that he is entitled to summary judgment because he did not appropriate Ventura's identity for a commercial purpose.  (Def.'s Mem. 16).  But this argument misses the mark because Ventura is not required to show a commercial purpose.  Under Minnesota law, appropriation "is not limited to commercial appropriation."  Restatement (Second) of Torts § 652C cmt. b.; see Lake, 528 N.W.2d at 233 (adopting Restatement (Second) of Torts § 652C as the rule for appropriation claims in Minnesota).  "It applies also when the defendant makes use of the plaintiff's name or likeness for his own purposes and benefit, even though the use is not a commercial one, and even though the benefit sought to be obtained is not a pecuniary one."  Restatement (Second) of Torts § 652C cmt. b.; see, e.g., Gregerson v. Vilana Fin., Inc., Civ. No. 06-1164, 2007 U.S. Dist. LEXIS 64960, at *23–24 (D. Minn. Aug. 31, 2007) (Montgomery, J.) (denying summary judgment on appropriation claim where defendant used plaintiffs' names in a disparaging way on a website linked to his own commercial photography

website because it "arguably" brought "increased consumer traffic to his commercial website" and because, "even without a commercial aspect, [plaintiffs] . . . alleged sufficient facts that [defendant] . . . used their names . . . for his own purposes and benefit"); Faegre & Benson, LLP v. Purdy, 447 F. Supp. 2d 1008, 1017–18 (D. Minn. 2006) (Davis, J.) (granting summary judgment in favor of plaintiffs on appropriation claim despite an apparent lack of commercial or pecuniary benefit); see also Kovatovich v. K-Mart Corp., 88 F. Supp. 2d 975, 986-87 (D. Minn. 1999) (Erickson, M.J.) (denying summary judgment on appropriation claim where defendant continued to use plaintiff's name on its letterhead after her discharge and plaintiff presented circumstantial evidence that defendant may have benefitted from the misrepresentation).

## II.     Unjust Enrichment

In Count III of his Complaint, Ventura alleges that Kyle has been unjustly enriched, in the form of book sales and other income, by his fabricated story.  A defendant has been unjustly enriched if he "has knowingly received or obtained something of value for which [he] in equity and good conscience should pay." ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc., 544 N.W.2d 302, 306 (Minn. 1996).  "Unjust enrichment claims do not lie simply because one party benefits from the efforts or obligations of others, but instead it must be shown that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully."  Id.

Kyle initially argued that he could not be unjustly enriched by his statements because he was donating the proceeds from his book to charity.  However, he withdrew this argument at the hearing and now argues that any personal benefit he may receive is

not unjust because he did not appropriate Ventura's name or likeness. Clearly, this argument fails for the same reason the Court cannot dismiss the appropriation claim: it depends on the truth or falsity of Kyle's statements, which the Court cannot decide at this stage.

Kyle also argues that the unjust-enrichment claim is an impermissible attempt to circumvent his First Amendment defenses to the defamation claim. The Court agrees that Ventura may not avoid Kyle's possible First Amendment privilege by virtue of unjust enrichment rather than, or in addition to, defamation. Hustler Magazine v. Falwell, 485 U.S. 46, 57 (1988) (First Amendment defenses apply equally to claim for intentional infliction of emotional distress as to claim for libel); Guzhagin v. State Farm Mut. Auto. Ins. Co., 566 F. Supp. 2d 962, 969 (D. Minn. 2008) (Tunheim, J.) ("[A] Minnesota plaintiff is not permitted to avoid defenses to a defamation claim by challenging the defamatory statements under another doctrine."). But Kyle is mistaken to the extent he argues that the unjust-enrichment claim is merely duplicative of the defamation claim. Although they may stem from the same underlying facts, recovery under the two claims is distinct—defamation relates to Ventura's damage while unjust enrichment relates to Kyle's benefit. See Zirinsky v. Sheehan, 413 F.2d. 481, 489 (8th Cir. 1969) ("'The theory of unjust enrichment is based on what the person allegedly enriched has received, not on what the opposing party has lost.'") (quoting Georgopolis v. George, 54 N.W.2d 137, 142 (Minn. 1952)). Accordingly, the Court will deny summary judgment on Ventura's unjust-enrichment claim.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS
ORDERED** that Defendant's Motion for Partial Summary Judgment (Doc. No. 11) is
**DENIED**.


Date:  December 20, 2012                              s/Richard H. Kyle
                                                     RICHARD H. KYLE
                                                     United States District Judge