UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jesse Ventura, a/k/a James G. Janos, an individual, | Civil No. 12-cv-0472 RHK/JJK |
| Plaintiff, | |
| vs. | **DEFENDANT'S BENCH BRIEF IN RESPONSE TO VENTURA'S BRIEF REGARDING THE ADMISSIBILITY OF EVIDENCE OF THE ESTATE'S LIABILITY INSURANCE** |
| Taya Kyle, as Executor of the Estate of Chris Kyle, | |
| Defendant. | |

## Introduction

Ventura argues that Taya Kyle's testimony about claims that are **not** covered by insurance have opened the door to the introduction of the publisher's insurance policy. This argument is implausible on its face, and the Court should reject it. Specifically, Court Anderson argued:

> Ms. Kyle has testified that she's had to pay the expenses associated with this litigation. She's testified that if she gives the money away to charity, that she wouldn't be able to pay a judgment; and that if she gave the money away, she may not be able to feed her children as a result of this litigation.

(07/09/07 Tr. at 174:18-23.) David Olsen then stated "when I have an opportunity to do recross on Ms. Kyle I plan to ask her about whether there is an insurance policy that, in fact, covers the legal expenses and will pay a judgment, because that is the case." (*Id*. at 175:21-24.)

John Borger responded by explaining that the insurance policy covers only the defamation claim—not the claims to recover book and movie royalties—and explained:

> One of the reasons for that is that this lawsuit and the claim against the Kyle estate for the royalties received from American Sniper, the book, are putting a cloud over what she can do with those royalties. If she gives them all away, then

1

>those funds would not be available to satisfy a judgment for misappropriation or unjust enrichment. **Those claims are not covered by the insurance policy and the other assets would be put at risk. The insurance policy has no relevance to this.**

(*Id*. at 177:2-178:16 (emphasis added).)  At the Court's request, this brief provides further support for Borger's argument.

As the Court knows, there are three claims at issue in this case—defamation, misappropriation, and unjust enrichment. Plaintiff ignores this fact and never once mentions the misappropriation or unjust enrichment claims in his bench brief dated April _, 2014.  And in Court, John Borger carefully avoided mention of the defamation claim when asking Taya Kyle the questions that Anderson now claims opened the door to insurance.

Contrary to Olsen's assertion that it "is the case," Plaintiff well knows that the insurance policy pertains only to the defamation claim. It does not cover damages related to the misappropriation and unjust enrichment claims. Thus, any reference to what the lawsuit has caused Taya Kyle to do with the "proceeds from AMERICAN SNIPER" (07/09/07 Tr. at 158:10) did not open any door through Federal Rule of Evidence 411 and cannot be considered "poor mouthing" because it is in fact true that, if there is a verdict in Plaintiff's favor on the misappropriation or unjust enrichment claims, the Estate itself will have to pay the award, without help from the insurance. Therefore, Ventura should not be allowed to refer to the insurance policy and open the can of worms that would go along with it.

### Background

Taya Kyle testified that she and Chris Kyle set up CT Legacy for the purpose of keeping tracking of income "from anything [Chris] did as far as speaking or anything like that" such as income from books, movies, and speaking engagements.  (07/09/14 Tr. at 119:16-24.)

After Olsen implied in his questioning of Taya Kyle that she had not donated the book proceeds as promised, Borger clarified that one of the reasons that she had not donated more money was as a result of this lawsuit:

> Q. And has this lawsuit had any impact upon what you have done with the proceeds from American Sniper, the book?
>
> A. Yeah, it has. I mean, some of it I actually had to use to pay for -- for personnel support like body guard type the first time I came in, and airline flight and hotel. And then any expenses that I've incurred for flights and then care for my children while I'm gone, stuff like that.[1]
> And am I answering it? I'm sorry. I'm s brain dead right now. Tell me –
>
> Q. Do you understand that the Plaintiff in this lawsuit is trying to recover all of the proceeds from the book?
>
> A. Oh, sorry. Yes. And so, yes, so I have been trying to absolutely keep that separate from anything else that I've done, and I am trying not to spend it so that I'll have more to give. And I don't know. I don't know. I'm an idiot. I don't know what I'm saying.
>   . . .
> Q. If the Plaintiff in this lawsuit recovers book proceeds from you as a result of this lawsuit and you have already given that money away –
>
> A. I see what you're saying, sorry.
>
> Q. Would you be able to pay the Plaintiff?
>
> A. I see what you're saying. Yeah, I mean, I need to hold onto it to -- so that if I had to pay something, that I can still have, you know, money to live on or raise my kids with. So I'm trying to be conservative with it.[2]

---

[1] When Taya Kyle attended the July 15, 2013, settlement conference in Minneapolis, she was accompanied by a bodyguard. The bodyguard donated his services; Taya Kyle paid his travel expenses. She also incurred child-care expenses during her litigation-related absences. Insurance did not cover any of these expenses. (*See* Dkt No. 184 at 4-5.)

(07/09/14 Tr. at 158:9-159:14.)

### Legal Standard

The parties agree that Fed. R. Evid. 411 governs the admissibility of evidence of liability insurance. The rule states:

> Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control.

Fed. R. Evid. 411. Under Fed. R. Evid. 411, evidence that a person was or was not insured is generally not admissible. This is because "knowledge of the presence or absence of liability insurance would induce juries to decide cases on improper grounds." Fed. R. Evid. 411, Advisory Committee Notes, 1972 Proposed Rules.

In addition, "[t]he general rule in the state courts and under Fed. R. Civ. P. 61 is that interjection of the fact that the defendant is protected by insurance or other indemnity may be prejudicial error requiring reversal." *Griffin v. Hilke*, 804 F.2d 1052, 1057 (8th Cir. 1986); *see also Eichel v. New York Cent. R. Co.*, 375 U.S. 253 (1963) ("It has long been recognized that evidence showing that the defendant is insured created a substantial likelihood of misuse."). "The reasoning behind this rule with regard to testimony or argument concerning the defendant's insurance or indemnity protection is that it will result in an unduly generous award of damages by the jury." *Griffin*, 804 F.2d at 1057; *see also Halladay v. Verschoor*, 381 F.2d 100, 112 (8th Cir. 1967) (finding that "parties are entitled to have the issues determined on their merits" and that "the injection of insurance or indemnity feature leading to the conclusion that the damages

---

[2] The applicable insurance policy does not cover the claims for misappropriation or unjust enrichment in which Plaintiff seeks to recover proceeds from the Book. (*See* Dkt No. 205 at 5-7; Dkt No. 184 at 4-5.)

4

sued for have been or will be taken care of by an insurance or indemnity company is utterly repugnant to a fair trial or to the securing of the rendition of a just verdict.").

## Argument

### I. Only the Misappropriation and Unjust Enrichment Claims Measure Damages by the Extent of Royalties Earned by AMERICAN SNIPER.

The Court stated in its Order dated December 20, 2012, "recovery under [defamation and unjust enrichment] is distinct—defamation related to Ventura's damage while unjust enrichment relates to Kyle's benefit." (Dkt No. 125 at 8 (citing *Zirinsky v. Sheehan*, 413 F.2d 481, 489 (8th Cir. (1969) ("The theory of unjust enrichment is based on what the person allegedly enriched has received, not on what the opposing party has lost.'")).) Similarly, any recovery for misappropriation would relate to Kyle's benefit because misappropriation occurs when "the defendant makes use of the plaintiff's name or likeness for his own purposes and benefit." (Dkt. No. 125 at 6) (citing Restatement (Second) of Torts § 652C cmt. b).)

Borger's questions to Taya Kyle addressed **only** the proceeds from the AMERICAN SNIPER book. Those proceeds would not be recoverable under a defamation theory, and therefore are not protected by insurance. Only Ventura's misappropriation or unjust enrichment claims could reach those proceeds.

In the unlikely event that Plaintiff prevails on either his unjust enrichment or misappropriation claim, Defendant would have to satisfy a judgment from the book proceeds that are part of the Estate assets without the assistance of insurance. Putting aside any tax-related reasons, if Taya Kyle at this stage were to donate all of the AMERICAN SNIPER proceeds, this would put the Estate's other assets at risk which are needed to support Taya Kyle's family. Consequently, Taya Kyle cautiously is holding most of the book proceeds in reserve until trial is over. Borger's questioning and Taya's Kyle answers related only to that particular purpose and

were unrelated to insurance or the defamation claim, which is directed at awarding damages based on harm to Plaintiff's reputation. This testimony was not "poor mouthing" but rather an attempt to explain why more of the book proceeds have not yet been donated – an explanation prompted by Olson's questioning about the level of book proceeds donations to date. (07/09/14 Tr. at 134-39.) Taya Kyle made a similar point in her September 11, 2013, deposition testimony. (T. Kyle Tr. 245:11-13) ("I have been advised to wait and see how much of any money potentially will be taken from us with this lawsuit. And I have been cautioned to be very careful about giving out extraordinary amounts to make sure that I am not high and dry with the kids at some point.").)

## II.     The Insurance Policy Relates Only to the Defamation Claim

The publisher's insurance policy covers the defamation claim only. (*See* Dkt No. 205 at 5-7; Dkt No. 184 at 4-5.) Borger did not ask questions related to the defamation claim—the only claim subject to which the publisher's insurance policy pertains. If there is a verdict in Plaintiff's favor on the misappropriation or unjust enrichment claims, the Estate itself will have to pay the award, without help from the insurance. No curative admissibility is needed because insurance will not assist the Estate in paying any judgment related to these two claims.

Moreover, at the last settlement conference, Plaintiff demanded a sum millions of dollars greater than the applicable insurance limit. If Plaintiff insists in focusing on the insurance issue, Defendant will seek to mitigate that testimony by discussing Plaintiff's settlement demands.

Dated:  July 9, 2014                                **FAEGRE BAKER DANIELS LLP**

                    By:  /s/ John P. Borger
                         John P. Borger, #9878
                         Charles F. Webber #215247
                         Leita Walker, #387095
                         2200 Wells Fargo Center
                         90 South Seventh Street
                         Minneapolis, MN 55402
                         Telephone:  (612) 766-7000
                         Fax:  (612) 766-1600
                         john.borger@FaegreBD.com
                         leita.walker@FaegreBD.com

                         Attorneys for Defendant Taya Kyle, Executor of the Estate of Chris Kyle (deceased)