# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Jesse Ventura a/k/a James
G. Janos,

                   Plaintiff,

v.

Taya Kyle, as Executor of the Estate of
Chris Kyle,

                   Defendant.

Civ. No. 12-472 (RHK/JJK)

**MEMORANDUM OPINION
AND ORDER**

David Bradley Olsen, Court J. Anderson, John N. Bisanz, Jr., Henson & Efron, P.A.,
Minneapolis, Minnesota, for Plaintiff.

John P. Borger, Leita Walker, Charles F. Webber, Amy M. Gernon, Holly A. Miller,
Faegre Baker Daniels LLP, Minneapolis, Minnesota, for Defendant.

      This matter is before the Court on Defendant's Motion for Judgment as a Matter of
Law or New Trial (Doc. No. 404). For the reasons that follow, the Motion will be
denied.

## BACKGROUND

      Plaintiff is a well-known former wrestler, actor, and Governor of Minnesota, who
served as a member of the Navy Special Forces Underwater Demolition/SEAL Teams
during the Vietnam War. Chris Kyle was a Navy SEAL sniper and author of an
autobiography entitled <u>American Sniper, the Autobiography of the Most Lethal Sniper in
U.S. Military History</u> (hereafter, "<u>American Sniper</u>"). The book, which was released

January 3, 2012, reached number one on the New York Times' Bestseller list by January 29, 2012, and in June 2012, Warner Brothers purchased the rights to a film adaptation.

In American Sniper, Kyle wrote a subchapter captioned "Punching Out Scruff Face" about an alleged altercation with Plaintiff.  According to Kyle, the encounter took place at McP's, a bar in Coronado, California, on October 12, 2006, during a wake for Kyle's comrade, Mike Monsoor, who was killed in the line of duty.  The subchapter reads as follows:

> AFTER THE FUNERAL WE WENT TO A LOCAL BAR FOR THE WAKE proper.
>
> As always, there were a bunch of different things going on at our favorite nightspot, including a small party for some older SEAL's and UDT members who were celebrating the anniversary of their graduation.  Among them was a celebrity I'll call Scruff Face.
>
> Scruff served in the military; most people seem to believe he was a SEAL.  As far as I know, he was in the service during the Vietnam conflict but not actually in the war.
>
> I was sitting there with Ryan and told him that Scruff was holding court with some of his buddies.
>
> "I'd really like to meet him," Ryan said.
>
> "Sure."  I got up and went over to Scruff and introduced myself.
>
> "Mr. Scruff Face, I have a young SEAL over here who's just come back from Iraq. He's been injured but he'd really like to meet you."
>
> Well, Scruff kind of blew us off.  Still, Ryan really wanted to meet him, so I brought him over. Scruff acted like he couldn't be bothered.
>
> *All right.*
>
> We went back over to our side of the bar and had a few more drinks. In the meantime, Scruff started running his mouth about the war and everything and anything he could connect to it.  President Bush was an asshole.  We were only over there because Bush wanted to show up his father.  We were doing the wrong thing, killing men and women and children and murdering.
>
> And on and on.  Scruff said he hates America and that's why he moved to Baja California. 9/11 was a conspiracy.
>
> And on and on some more.
>
> The guys were getting upset.  Finally, I went over and tried to get him to cool it.

> "We're all here in mourning," I told him.  "Can you just cool it?
> Keep it down."
> "You deserve to lose a few," he told me.  Then he bowed up as if to
> belt me.
> I was uncharacteristically level-headed at that moment.
> "Look," I told him, "why don't we just step away from each other
> and go on our way?"  Scruff bowed up again.  This time he swung.
> Being level-headed and calm can last only so long.  I laid him out.
> Tables flew.  Stuff happened.  Scruff Face ended up on the floor.
> I left.
> Quickly.
> I have no way of knowing for sure, but rumor has it he showed up at
> the BUD/S graduation with a black eye.

While not naming Plaintiff in print, Kyle confirmed in television, radio, and print

interviews that "Scruff Face" was Plaintiff.  In early January 2012, Kyle appeared on the

Opie & Anthony Show, a talk-radio program, and the O'Reilly Factor, a talk show,

retelling the above-quoted story about Plaintiff and repeating his alleged statement, "You

deserve to lose a few guys."  The story also appeared on FOX News.

Plaintiff commenced the instant action against Kyle in February 2012, asserting

claims of defamation, misappropriation, and unjust enrichment.  Kyle moved for partial

summary judgment in the fall of 2012, but his Motion was denied.  In February 2013,

Kyle was killed by a fellow veteran, against whom criminal charges are currently pending

in Texas.  His wife was appointed executrix of his estate and substituted as the Defendant

in this action in July 2013.  She, too, moved for summary judgment at the conclusion of

discovery, but her Motion also was denied.

The case then proceeded to a jury trial in July 2014 on the three claims asserted in

the Complaint.  As the unjust-enrichment claim was an equitable one, the Court

employed the jury in an advisory capacity only as to that claim.  See Fed. R. Civ. P.

39(c)(1).  The jury delivered a split verdict on the first two claims, finding for Plaintiff on the defamation claim (and awarding him $500,000 in damages) and for Defendant on the misappropriation claim.  The jury also found in Plaintiff's favor on the unjust-enrichment claim and assessed $1,345,477.25 in damages.  The Court later adopted the jury's verdict on the unjust-enrichment claim as its own.  (See Doc. No. 391.)

Defendant now argues she is entitled to judgment as a matter of law, or alternatively a new trial, on the defamation and unjust-enrichment claims.  Her contentions are addressed in turn below.

## ANALYSIS

## I.      Judgment as a matter of law

### A.      The defamation claim

When "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may resolve the issue against the party."  Fed. R. Civ. P. 50(a)(1)(A).  Defendant invoked this Rule and sought judgment as a matter of law at the close of Plaintiff's case (Doc. No. 347) but the Court denied the Motion, concluding that after "two weeks of trial," and having "reviewed the testimony and evidence received," there was "sufficient evidence upon which a reasonable jury could find in favor of Plaintiff."  (Doc. No. 359.)  Defendant has now renewed her Motion, as is appropriate under Rule 50, but in the Court's view she has offered nothing that would lead it to alter its prior conclusion.  See Gill v. Maciejewski, 546 F.3d 557, 562 (8th Cir.

2008) ("The moving party bears a heavy burden on a motion for JAML [judgment as a matter of law].").

Defendant first argues that Plaintiff failed to prove the falsity of Kyle's statements. (Def. Mem. at 13-19.)  But in order to grant judgment as a matter of law on this basis, "all the evidence must point one way and be susceptible of *no reasonable inference* sustaining [Plaintiff's] position."  Dace v. ACF Indus., Inc., 722 F.2d 374, 375-76 (8th Cir. 1983) (emphasis added); accord, e.g., Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc., 528 F.3d 1001, 1009 (8th Cir. 2008) ("[A] jury verdict is entitled to extreme deference, and we will not set it aside unless no reasonable jury could have reached the same verdict based on the evidence submitted.") (internal citations omitted). That would be an untenable conclusion here, because this case largely boiled down to a credibility contest, with several witnesses testifying that Plaintiff's version of events was true, while several other witnesses testified that Kyle's version of events was true. Credibility determinations are inherently within the province of a jury and simply cannot be used to undermine its verdict.  See, e.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) ("[I]n entertaining a motion for judgment as a matter of law, the court . . . must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.  Credibility determinations . . . are jury functions, not those of a judge.") (internal citations omitted); GLB Enters., Inc. v. United States, 232 F.3d 965, 968 (8th Cir. 2000) (judgment as a matter of law appropriate when "the evidence is such that, without weighing the credibility of the witness or otherwise considering the weight of the evidence, there can

be only one conclusion as to the verdict that reasonable persons could have reached")
(citation omitted).[1]

Defendant next argues Plaintiff failed to prove actual malice by clear-and-
convincing evidence.  (Def. Mem. at 19-22.)  But Plaintiff was only required to show
"that [Kyle] knew the statements [he published] were false" or that he acted "in 'reckless
disregard' of whether they were true or false – that is, he 'entertained serious doubts as to
the truth of his publication.'"  (Doc. No. 269 at 10 (quoting Masson v. New Yorker
Magazine, Inc., 501 U.S. 496, 510 (1991)) (internal quotation omitted).)  The simple fact
that Kyle discussed an unambiguous event ("punching out" Plaintiff) was itself a
sufficient basis upon which the jury could predicate a finding of actual malice.  As the
Court noted previously:

> While it is possible Kyle could have misinterpreted Ventura's comments to
> him and innocently published a false account of them, this reasoning does
> not apply to Kyle's account of "punching out" Ventura.  If Ventura proves
> that statement was false – that is, if a jury does not believe Kyle punched
> Ventura – it follows that Kyle fabricated it.  See Robert D. Sack, Sack on
> Defamation, § 5.52, at 5-83–84 ("[I]f the defendant is an eyewitness to an
> *unambiguous* event which he or she then misreports, a finding of actual
> malice may arise from testimony of other witnesses establishing that the
> event did not happen as described: It follows that the description was
> fabricated.") (emphasis added).  And if a jury concludes Kyle fabricated

[1] Defendant also argues Plaintiff was required to prove falsity by clear-and-convincing evidence.
(Def. Mem. at 13-15.)  But she acknowledges that neither the Supreme Court nor the Eighth
Circuit (nor any Minnesota court) has ever imposed that burden on a public figure such as
Plaintiff.  (Id. at 14.)  Regardless, in the Court's view the evidence here, viewed in the light most
favorable to the verdict, see S. Wine & Spirits of Nev. v. Mountain Valley Spring Co., 646 F.3d
526, 533 (8th Cir. 2011), was sufficient to prove falsity by this higher standard.  Defendant
contends Plaintiff failed to surmount this hurdle because clear-and-convincing evidence requires
something more "than one man's word against another['s]," In re McDonough, 296 N.W.2d 648,
694 (Minn. 1980), but far more was presented here.  Indeed, *several* witnesses testified
consistently with Plaintiff, and other evidence – such as the absence of obvious injury in
photographs taken after the incident – supports Plaintiff's version of events.

part of the story, it could reasonably conclude he fabricated the rest of his story about Ventura.

(Id. at 11.)

At bottom, Plaintiff presented sufficient evidence to support the jury's finding that Kyle defamed him.

## B.    The unjust-enrichment claim

Defendant also argues she is entitled to judgment as a matter of law on the unjust-enrichment claim.  (Def. Mem. at 3-13.)  The jury served in an advisory capacity on the unjust-enrichment claim, and hence this portion of Defendant's Motion is not governed by Federal Rule of Civil Procedure 50.  See, e.g., Geddes v. Nw. Mo. State Univ., 49 F.3d 426, 429 n.7 (8th Cir. 1995) ("Rule 50 applies to matters tried by jury, . . . not to this case in which the district court acted as the finder of fact."); Shim-A-Line, Inc. v. Northstar Mfg. Co., Civ. No. 3-91-520, 1994 WL 549517, at *4 (D. Minn. Apr. 19, 1994) (Magnuson, J.) ("Rule 50 applies only in cases tried to a jury with the power to return a binding verdict.  It does not apply to cases tried without a jury nor to those tried to the court with an advisory jury.") (citation omitted).  Rather, Federal Rule of Civil Procedure 52 controls.  See, e.g., Schoedinger v. United Healthcare of Midwest, Inc., 557 F.3d 872, 878 (8th Cir. 2009).  That Rule provides that in non-jury matters, the Court must specially find the facts and base its conclusions of law on those facts, and once a party has been fully heard on an issue, the Court "may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue."  Fed. R. Civ. P. 52(a), (c).

Here, because Defendant's Motion does not invoke (or even mention) Rule 52 (see Doc. No. 404),[2] it is unclear which portion of the Rule she believes entitles her to relief, and no portion of the Rule obviously applies.  True, Rule 52(b) provides that within 28 days of the entry of judgment, a party may move the court to "amend its findings – or make additional findings – and may amend the judgment accordingly."  Fed. R. Civ. P. 52(b).  But the text of Rule 52 makes clear that the word "findings" means *factual* findings (as opposed to legal *conclusions*).  See, e.g., Ollier v. Sweetwater Union High Sch. Dist., 858 F. Supp. 2d 1093, 1117 (S.D. Cal. 2012) ("Motions under Rule 52(b) are designed to correct findings of fact which are central to the ultimate decision.") (internal quotation marks and citation omitted); Panton v. United States, No. 98 Cv. 1881, 2010 WL 5422293, at *2 (S.D.N.Y. Dec. 23, 2010) ("Rule 52(b) provides a means to dispute underlying facts that resulted in faulty factual findings or conclusions of law based on those facts. . . . Where a petitioner fails to dispute facts in the record, a motion under 52(b) is inappropriate.").  And here, Defendant's arguments are primarily legal ones, not factual.  Hence, it does not appear Rule 52(b) authorizes the relief Defendant seeks.  See id. (declining to apply Rule 52(b) to arguments that were "purely legal in nature").[3]

---

[2] This in and of itself could provide a basis – albeit a technical one – to deny Defendant's Motion.  See, e.g., Miles-Hickman v. David Powers Homes, Inc., 613 F. Supp. 2d 872, 879 (S.D. Tex. 2009) (denying renewed motion for judgment as a matter of law on claim tried to advisory jury because defendant invoked only Rule 50, which "is not the appropriate mechanism for challenging the outcome on which no right to jury trial attaches"); Shim-A-Line, 1994 WL 549517, at *4.

[3] To the extent Defendant's arguments are factual in nature, the Court finds them unavailing for the reasons stated when adopting the jury's unjust-enrichment verdict as its own.  (See Doc. No. 391 (discussing the evidence supporting the conclusion that Kyle unfairly profited from the story

That Defendant's contentions are primarily legal raises another significant problem.  The crux of Defendant's argument is that unjust enrichment, an *equitable* remedy, was unavailable because Plaintiff had *legal* remedies available to him in the form of defamation and/or misappropriation.  But this argument was not contingent on the facts of this case and, hence, could have been raised – and in the Court's view, *should have* been raised – from the outset.  Notably, Kyle moved for partial summary judgment on the unjust-enrichment claim early in this action but nowhere argued the claim failed because legal remedies were available; he challenged only the sufficiency of the evidence to support that claim.  (See Doc. No. 25.)[4]  After Kyle passed away, his wife, as executor of his estate, was substituted as Defendant, and she, too, moved for summary judgment. But as before, she nowhere raised this legal/equitable distinction, choosing to parrot Kyle's argument that insufficient evidence existed of unjust enrichment.  (See Doc. Nos. 234, 253.)  Defendant later submitted proposed jury instructions to the Court which were replete with legal argument (see Doc. No. 297 at 8-9) but which did not assert the unjust-enrichment claim was barred as a matter of law.  At trial, the parties introduced a bevy of evidence regarding this claim, including evidence regarding American Sniper's sales and the amount of profits derived therefrom, without raising this objection.  At the close of Plaintiff's case, Defendant moved for judgment as a matter of law and filed a brief in

---

regarding Plaintiff and noting that the jury's calculation of damages fell within a reasonable range (approximately 25% of American Sniper's profits)).)

[4] To be sure, Kyle briefly raised this issue in his reply (see Doc. No. 48 at 8), but the Court did not address it because a "reply memorandum must not raise new grounds for relief," D. Minn. LR 7.1(c)(3)(B).

support of that Motion (Doc. No. 349), but this argument was notably absent.  And finally, but perhaps most critically, Defendant interposed no objection to the Court's instructions to the advisory jury on the unjust-enrichment claim.  Now, however, facing a hefty adverse judgment, the legal/equitable distinction is the centerpiece of her argument for dismissing the unjust-enrichment claim.

In the Court's view, Defendant is foreclosed from raising the issue at this juncture. It has long been held that motions under Rule 52 "cannot be used to raise arguments which could have been raised prior to the issuance of judgment."  Diocese of Winona v. Interstate Fire & Cas. Co., 89 F.3d 1386, 1397 (8th Cir. 1996); accord, e.g., Fontenot v. Mesa Petroleum Co., 791 F.2d 1207, 1220 (5th Cir. 1986) ("Blessed with the acuity of hindsight, [a defendant] may . . . realize that it did not make its initial case as compellingly as it might have, but it cannot charge the District Court with responsibility for that failure through [a] Rule 52(b) motion."); Acosta v. Tyson Foods, Inc., No. 8:08CV86, 2014 WL 824083, at *1 (D. Neb. Mar. 3, 2014).  Defendant had ample opportunity to argue Plaintiff was precluded from proceeding on a theory of unjust enrichment, but failed to do so.  To conclude that she may raise the issue now, following trial, might incentivize defendants to hold in reserve legal arguments for the dismissal of claims, taking their chances first that the Court (or an advisory jury) would find in their favor and then, if not, spring the argument after the fact in "gotcha" fashion.  This could potentially lead to both the needless expenditure of time and resources and "defeat the compelling interest in the finality of litigation."  Fontenot, 791 F.2d at 1219; cf. Hinz v. Neuroscience, Inc., 538 F.3d 979, 984-85 (8th Cir. 2008) (renewed motion for judgment

as a matter of law following jury trial is limited to issues raised in previous motion).

Simply put, in this Court's view parties must bring forward such legal arguments long

before judgment has entered.[5]

Nevertheless, the Court concludes that even if not waived, this legal/equitable

argument fails on the merits.

A claim for unjust enrichment lies when "the defendant has knowingly received or

obtained something of value for which the defendant in equity and good conscience

should pay." ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc., 544 N.W.2d 302, 306

(Minn. 1996) (internal quotation marks and citation omitted).  It is an equitable remedy

predicated on an underlying wrong – "it must be shown that a party was unjustly enriched

in the sense that the term 'unjustly' could mean illegally or unlawfully." Id. (citation

---

[5] This conclusion is not altered by the fact that Defendant's Motion also invokes Federal Rule of Civil Procedure 59, which provides that "[a]fter a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." Fed. R. Civ. P. 59(a)(2).  As with Rule 52, a motion under Rule 59 is not designed to afford the movant an opportunity to raise arguments that were previously available to her. See, e.g., Waugh v. Williams Cos., Inc. Long Term Disability Plan, 323 F. App'x 681, 684-85 (10th Cir. 2009) (affirming denial of motion under Rule 59(a)(2) where appellant was "attempting to advance arguments she could have readily asserted" earlier); Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998) ("Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'").  Schaub v. VonWald, 638 F.3d 905 (8th Cir. 2011), cited in Defendant's reply brief, is not to the contrary.  There, the Eighth Circuit held that the defendant's challenge to the *sufficiency of the evidence*, raised for the first time on appeal, was not barred. Id. at 924.  But this is not surprising, as Rule 52 expressly contemplates this possibility. See Fed. R. Civ. P. 52(a)(5) ("A party may later question the sufficiency of the evidence supporting the findings, whether or not the party requested findings, objected to them, moved to amend them, or moved for partial findings.").  The distinction here is that Defendant challenges the unjust-enrichment verdict on *legal* grounds, not for insufficient evidence.

CASE 0:12-cv-00472-RHK-FLN   Document 415   Filed 11/26/14   Page 12 of 24

omitted).  Here, the underlying wrong – the "illegal" or "unlawful" conduct – supporting

Plaintiff's unjust-enrichment claim was Kyle's defamation.[6]

However, it is important for courts to distinguish claims for unjust enrichment

from the underlying illegal or wrongful acts upon which they are based.  <u>ServiceMaster</u>

and several other Minnesota decisions have noted that a "party may not have equitable

relief" in the form of unjust enrichment "where there is an adequate remedy at law

available" for the underlying wrongful act.  <u>Id.</u> at 305.  Defendant seizes on this principle

here to argue Plaintiff "had a legal remedy – a defamation claim – available to redress

any injury to his reputation" (Def. Mem. at 4), which purportedly foreclosed him from

seeking relief through unjust enrichment.

The problem with this argument is that it ignores a key word from <u>ServiceMaster</u>:

*adequate*.  A claim for unjust enrichment is barred only when a plaintiff has an otherwise

*adequate* legal remedy.  <u>Id.</u>  That was simply not the case here.  It is undisputed the

damages available to Plaintiff on his defamation claim were limited to those necessary to

remedy the injury to his reputation.  The jury was so instructed.  (<u>See</u> Doc. No. 362 at

19.)  In fact, the jury was expressly advised – *at Defendant's behest* (<u>see</u> Doc. No. 297 at

55) – that it could *not* award additional damages for unjust enrichment if it found that

Plaintiff's "damages award for defamation . . . provide[d] him with an adequate remedy."

(<u>Id.</u> at 20.)  This scuttles Defendant's argument.  Plaintiff's defamation claim provided

---

[6] Defendant argues Plaintiff's claim for *misappropriation* precluded relief under a theory of
unjust enrichment, but the underlying predicate for unjust enrichment here was defamation, not
misappropriation.  (<u>See</u> Doc. No. 362 at 17 (instructing the advisory jury that to "prevail on []his
unjust-enrichment claim, [Plaintiff] must have proved his defamation claim").)

him with no means to obtain the disgorgement of Defendant's ill-gotten gains – money the jury found, and the Court agreed, that Defendant made by defaming Plaintiff in American Sniper.  Only through unjust enrichment could Plaintiff attempt to force Defendant to yield those improper profits.  Under these circumstances, Plaintiff's legal remedy was inadequate to fully ameliorate Defendant's wrongful conduct, and the defamation claim did not preclude the unjust-enrichment claim as a matter of law.  See, e.g., Caldas v. Affordable Granite & Stone, Inc., 820 N.W.2d 826, 838 (Minn. 2012) (unjust enrichment "allows a plaintiff to recover a benefit conferred upon a defendant when retention of the benefit is not legally justifiable"); Park-Lake Car Wash, Inc. v. Springer, 394 N.W.2d 505, 514 (Minn. Ct. App. 1986) (unjust enrichment may be found where the result of a party's conduct "will be unconscionable either in the benefit to himself *or* the injury to others") (emphasis added); see also Grp. Health, Inc. v. Heuer, 499 N.W.2d 526, 530 (Minn. Ct. App. 1993) ("[E]quity will not permit a tortfeasor to benefit by receiving a windfall.").

Defendant also argues that allowing Plaintiff to recover damages via unjust enrichment, above and beyond those awarded by the jury for defamation, would run afoul of the First Amendment.  (Def. Mem. at 4-5.)  True, the Supreme Court recently recognized that even some knowingly false speech is protected under the Constitution. See United States v. Alvarez, __ U.S. __, 132 S. Ct. 2537, 2551 (2012) (holding unconstitutional the Stolen Valor Act, which criminalized falsely claiming to have won the Congressional Medal of Honor).  But defendants enjoy no *carte blanche* to lie with impunity.  And Defendant is simply wrong to claim the First Amendment requires

limiting the damages available for actionable false speech to the plaintiff's loss.  See, e.g., id. at 2547 ("Where false claims are made to effect a fraud *or secure moneys or other value considerations*, . . . it is well established that the Government may restrict speech without affronting the First Amendment.") (emphasis added); see also Gertz v. Robert Welch, Inc., 418 U.S. 323, 349 (1974) (*punitive* damages available for defamation when defendant knew statement was false or recklessly disregarded its truth).

For all of these reasons, Defendant's Motion for Judgment as a Matter of Law will be denied.

## II.   New trial

Federal Rule of Civil Procedure 59(a)(1) provides that the Court "may, on motion, grant a new trial on all or some of the issues – and to any party – as follows:  (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or (B) after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court."  In evaluating a motion for a new trial, the "key question" is whether retrial is needed "to avoid a miscarriage of justice," McKnight v. Johnson Controls, Inc., 36 F.3d 1396, 1400 (8th Cir. 1994), either because of legal errors made during the trial or because the verdict is against the weight of the evidence, White v. Pence, 961 F.2d 776, 780 (8th Cir. 1992).[7]  "The authority to grant a new trial . . . is confided almost entirely to the exercise of discretion on the part of the trial court."  Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980).  But in

---

[7] At the tail-end of her Motion, Defendant argues the verdicts on the defamation and unjust-enrichment claims were against the clear weight of the evidence.  (Def. Mem. at 39-40.)  For the reasons already discussed, the Court rejects that contention.

exercising that discretion, "a district judge is not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." <u>King v. Davis</u>, 980 F.2d 1236, 1237 (8th Cir. 1992) (citing <u>White</u>, 961 F.2d at 780). "Instead, a district judge must carefully weigh and balance the evidence and articulate reasons supporting the judge's view that a miscarriage of justice has occurred." <u>Id.</u>

## A.    Jury instructions

Defendant argues the Court erred in several of its jury instructions.  (Def. Mem. at 23-30.)[8]  A new trial may be appropriate when a jury has been improperly instructed. <u>See, e.g.</u>, <u>McKay v. WilTel Commc'n Sys., Inc.</u>, 87 F.3d 970, 976 (8th Cir. 1996).  The question is whether the Court's instructions, "taken as a whole and viewed in the light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury." <u>Gill</u>, 546 F.3d at 563 (citation omitted).  Notably, a party is not entitled to any particularly worded jury instruction, <u>Ryther v. KARE 11</u>, 108 F.3d 832, 847 (8th Cir. 1997) (*per curiam*), and the instructions need not be "technically perfect or even a model of clarity," <u>Gill</u>, 546 F.3d at 563.  Moreover, erroneous jury instructions entitle a party to a new trial only if the error "affected [her] substantial rights." <u>Id.</u>; <u>see also</u> Fed. R. Civ. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

---

[8] These arguments, of course, relate only to the defamation claim, as the jury served in an advisory capacity with respect to the unjust-enrichment claim.

In the Court's view, none of its instructions here was erroneous.  But even if the Court erred, no such error "misled the jury or had a probable effect on its verdict."  <u>Goss Int'l Corp. v. Man Roland Druckmaschinen Aktiengesellschaft</u>, 434 F.3d 1081, 1093 (8th Cir. 2006) (citation omitted).  Accordingly, Defendant is not entitled to a new trial.

Defendant first argues the Court wrongly instructed the jury that Plaintiff had to prove falsity only by a preponderance of the evidence, rather than by clear-and-convincing evidence.  (Def. Mem. at 23-24.)  But as noted above (<u>see</u> <u>supra</u> note 1), no binding authority required the Court to impose such an onerous evidentiary standard, and in any event the evidence here was sufficient to meet it.  There was no error, let alone a substantially prejudicial one.

Defendant next argues the Court "changed" one of its instructions in response to a question from the jury.  (Def. Mem. at 24-26.)  In Instruction 8, the Court charged the jury as follows:

> Plaintiff Jesse Ventura claims that Chris Kyle defamed him by asserting in <u>American Sniper</u>, as well as on television and radio, that Mr. Ventura said "he hates America," the SEALs "were killing men and women and children and murdering," and the SEALs "deserve to lose a few."  To prevail on this defamation claim, Mr. Ventura must prove:
>
> > <u>One</u>, Mr. Kyle's *story* about Mr. Ventura was defamatory;
> >
> > <u>Two</u>, the *story* was materially false; *and*
> >
> > <u>Three</u>, Chris Kyle published the *story* knowing it was false, believing it was false, or having serious doubts about its truth.

(Doc. No. 362 at 12 (emphases added).)  During deliberations, the jury inquired whether the "story" referenced in this instruction was the sub-chapter of <u>American Sniper</u> in

which Plaintiff was discussed, or rather was limited to the three specific statements

mentioned in the instruction.  (See Doc. No. 369.)  The Court responded that the term

"story" meant the comments made about Plaintiff in American Sniper, which *included*

the three referenced statements, but the question was whether "the story as a whole" was

defamatory.  (Doc. No. 370.)  According to Defendant, this was error because it altered

Instruction 8 by shifting the jury's focus from the three referenced statements to the entire

book sub-chapter.  (Def. Mem. at 25-26.)

Yet, in discussing the Court's proposed response to the question, defense counsel

conceded the issue was not whether these three statements were defamatory in *isolation*,

but rather whether they were defamatory when viewed *in context*; indeed, defense

counsel "*want[ed] them*" – meaning the jury – "to read these things in context."  (Tr. at

2071 (emphasis added).)[9]  This is hardly a surprise, as Plaintiff's counsel noted "none of

the[] statements would probably be defamatory outside the context of the story," and

defense counsel agreed.  (Id. at 2073.)  That is consistent with Minnesota law.  See, e.g.,

Dunham v. Opperman, No. A06-750, 2007 WL 1191599, at *2 (Minn. Ct. App. Apr. 24,

2007) (noting several allegedly defamatory statements in letter were not considered

individually, but rather letter was "taken as a whole" to determine defamatory meaning).

Schlieman v. Gannett Minn. Broad., Inc., 637 N.W.2d 297, 304 (Minn. Ct. App. 2001)

(reversing defamation verdict for defendant television station after district court

instructed jury to consider only statement on its face; "[R]estricting the jury's

consideration . . . resulted in an instruction that told the jury [it] could not consider all

---

[9] "Tr." refers to the trial transcript.

contextual evidence in determining whether any of the statements had a defamatory meaning.  In determining whether a communication is defamatory, words must be construed in context.  The instruction[] communicated that [the jury] could not take into account the statements preceding and following the alleged defamatory statement – the context of the statement.") (citations omitted); Harman v. Heartland Food Co., 614 N.W.2d 236, 240 (Minn. Ct. App. 2000) ("[W]hether a defamatory meaning is conveyed is dependent upon . . . the language used in the light of surrounding circumstances," and statements "must be construed . . . without taking any word or phrase out of context.") (quoting Morey v. Barnes, 2 N.W.2d 829, 831 (Minn. 1942)).[10]  Moreover, to inform the jury that the term "story" meant the three statements in isolation, divorced from the remainder of the sub-chapter in which they appeared, would have been confusing and contrary to the commonly understood meaning of the word "story."  See Webster's New International Dictionary 2253 (3d ed. 1986) (defining "story" to mean "a connected narrative of important events").   And, Plaintiff has always alleged, since the beginning of this case, that the entire relevant sub-chapter of American Sniper was defamatory, not the statements themselves, devoid of context.  (See Compl. ¶¶ 18-19, 30, 32.)  The Court

---

[10] Defendant argues "the Eighth Circuit 'parses' the defamation elements within particular statements [and] does not sloppily pull elements from an entire book [chapter]."  (Reply at 4.)  But Defendant is simply incorrect – our Circuit has recognized that "[i]n determining whether a particular statement is defamatory, a court *must review the statement in the context in which it was presented*, give the words their obvious and natural meaning, and consider the innuendos which follow from the statement."  Michaelis v. CBS, Inc., 119 F.3d 697, 700 (8th Cir. 1997) (emphasis added) (citation omitted).

perceives no error in its answer to the jury's question, nor any "change" to Instruction 8 created by that answer.[11]

Similar logic undermines Defendant's next argument.  She contends the Court erred by failing to instruct the jury that "each of Kyle's statements had to satisfy all three elements of defamation."  (Def. Mem. at 26.)  But this simply rehashes her argument that the statements alone, rather than the statements viewed in the context of the story as a whole, must be defamatory.  For reasons already explained, the Court appreciates no error.

Defendant next argues the Court erred in failing to give a curative instruction after "erroneously" permitting Plaintiff to introduce evidence that Kyle and his publisher (HarperCollins) never retracted the story.  (Def. Mem. at 27-28.)  Defendant contends such evidence was irrelevant to the question of actual malice, which turned on his state of mind *at the time of publication*, not afterward.  But "most authorities suggest that a failure to retract, in conjunction with other circumstances, may be used to establish the requisite level of malice."  John C. Martin, Comment, <u>The Role of Retraction in Defamation Suits</u>, 1993 U. Chi. Legal F. 293, 295 (1993); <u>accord, e.g.</u>, <u>Tavoulareas v. Piro</u>, 817 F.2d 762, 794 (D.C. Cir. 1987) (*en banc*) (refusal to retract can be evidence of actual malice); <u>Golden Bear Distrib. Sys. of Tex., Inc. v. Chase Revel, Inc.</u>, 708 F.2d 944, 950 (5th Cir 1983), <u>abrogated on other grounds by</u> <u>Hiller v. Mfrs. Prod. Research Grp. of N. Am., Inc.</u>, 59 F.3d 1514, 1520-21 (5th Cir. 1995); Restatement (Second) of Torts

---

[11] For this same reason, the Court rejects Defendant's argument that she was prejudiced because her counsel "relied on the language of" Instruction 8 in closing argument, but the Court then "changed" that instruction in response to the jury's question.  (Def. Mem. at 25.)

§ 580A, cmt. d (1977) ("Under certain circumstances evidence [of a refusal to retract a statement after it has been demonstrated to be false] . . . might be relevant in showing recklessness at the time the statement was published.").  In any event, even if the Court erred in admitting such evidence, it cannot have been prejudicial because, as Defendant herself notes, the evidence could have "just as easily be[en] construed as evidence that [Kyle] truly believed his statements and therefore did not act with actual malice."  (Def. Mem. at 28.)  "When a given fact is susceptible of two reasonable inferences, it is for the jury to determine which one it will adopt."  Tavoulareas v. Piro, 759 F.2d 90, 112 (D.C. Cir. 1985) (refusal to retract may show malice or may show "the publisher believed and still believes that the falsehood was true," but it is the jury that decides "which inference was more likely"), vacated on other grounds en banc, 817 F.2d 762 (D.C. Cir. 1987).  No curative instruction was therefore required.

Finally, Defendant argues the Court erred in failing to instruct the jury on the meaning of the term "serious doubt" (Def. Mem. at 29-30),[12] but the Court disagrees. During deliberations the jury asked, "What is the legal definition of 'serious doubt'?" (Doc. No. 373.)  The Court responded that "serious doubt" has no legal definition and the jury would have to "rely on [its] common sense in interpreting and applying" that term. (Doc. No. 374.)  Defendant contends this was erroneous, but the Court does not believe the term "serious doubt" required further explication beyond its commonly understood meaning.  Moreover, none of the cases cited by Defendant defines the term "serious

---

[12] As noted above, the third element of the defamation claim required Plaintiff to show Kyle "published the story knowing it was false, believing it was false, or having serious doubts about its truth."  (See supra at 16.)

doubt," and the Court's own research has failed to disclose any binding precedent

providing an express definition.  In fact, the key case cited by Defendant simply

"equated" that term with several other undefined ones.  Gertz, 418 U.S. at 334 n.6

(likening "reckless disregard of the truth with subjective awareness of probable falsity:

'There must be sufficient evidence to permit the conclusion that the defendant in fact

entertained serious doubts as to the truth of his publication.'").  Besides providing no

specific definition of the term "serious doubt," Gertz also indicates the Court's

instruction – requiring Plaintiff to show Kyle "published the story knowing it was false,

believing it was false, or having serious doubts about its truth" – correctly stated the law.

No further instruction was required.

## B.    Evidentiary errors

Defendant next argues the Court committed several evidentiary errors entitling her

to a new trial.  (Def. Mem. at 30-38.)  A district court

> is possessed with broad discretion in its evidentiary rulings made at trial,
> and we will reverse only if they amount to "a clear and prejudicial abuse of
> discretion."  Lovett ex rel. Lovett v. Union Pac. R.R. Co., 201 F.3d 1074,
> 1081 (8th Cir. 2000).   To warrant reversal, an error "must affect a
> substantial right of the objecting party, and the burden of showing prejudice
> rests on that party."  ACTONet, Ltd. v. Allou Health & Beauty Care, 219
> F.3d 836, 848 (8th Cir. 2000) (quoting [Crane v.] Crest Tankers, Inc., 47
> F.3d 292, 296 (8th Cir. 1995)).  "Only when the evidence excluded is of
> such a critical nature that there is 'no reasonable assurance that the jury
> would have reached the same conclusion had the evidence been admitted'
> has a district court so abused its discretion."  Stephens v. Rheem Mfg. Co.,
> 220 F.3d 882, 885 (8th Cir. 2000) (quoting Adams v. Fuqua Indus., Inc.,
> 820 F.2d 271, 273 (8th Cir. 1987)).

Gill, 546 F.3d at 562-63.  Suffice it to say, Defendant has not identified any errors, let alone errors leading the Court to conclude a different result would have been reached in their absence.  A new trial is not warranted.

Defendant first contends the Court improperly admitted evidence that HarperCollins was insured and such insurance would pay any damages awarded to Plaintiff.  But in the Court's view such evidence was relevant to the bias (or credibility) of HarperCollins's witnesses.  See, e.g., Fed. R. Evid. 411; Peri & Sons Farms, Inc. v. Jain Irrigation, Inc., No. 3:11-cv-00757, 2013 WL 432614, at *7-8 (D. Nev. Feb. 4, 2013) (evidence that defendant was insured admissible to show bias of defense witnesses). Moreover, the inquiry on this topic was limited, and nothing about Plaintiff's questions regarding insurance suggested to the jury that Kyle "acted negligently or otherwise wrongfully."  Fed. R. Evid. 411.  Finally, the Court agrees with Plaintiff that Defendant opened the door to this inquiry by testifying about the financial impact of this litigation and her use of the book's proceeds.  See, e.g., Weiss v. La Suisse, Societe D' Assurances Sur La Vie, 293 F. Supp. 2d 397, 413 (S.D.N.Y. 2003) (collecting cases recognizing that evidence of insurance is admissible "where the insured opens the door to the issue by 'poor mouthing' or where the party's ability to pay damages has been put into issue").

Defendant next argues the Court wrongly excluded the "expert reputation testimony" of Professor David Schultz.  (Def. Mem. at 34.)  The Court declines to revisit this issue (see Doc. No. 331); as previously noted, the Court finds Professor Schultz's proposed testimony would not have been helpful to the jury and was not based on sufficient facts or on specialized knowledge rendering expert testimony appropriate under

Federal Rule of Evidence 702 and <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993).  Nor does the Court believe a proper foundation existed for Professor Schultz to offer lay opinions regarding Plaintiff's reputation.[13]

Defendant's final evidentiary argument is that the Court erred in admitting evidence that Kyle and his publisher failed to retract the story.  (Def. Mem. at 37-38.) This issue has already been discussed and rejected above and merits no further discussion.

### C.    The verdict form

Finally, Defendant argues she is entitled to a new trial because the Court's Verdict Form did not ask the jury "to determine defamatory meaning, falsity, and constitutional malice separately as to each of Kyle's statements."  (<u>Id.</u> at 38.)  This is yet another attempt to rehash her argument for parsing each of Kyle's statements, rather than viewing them in their totality and in the context of the entire sub-chapter in question, which the Court has already rejected.  Moreover, the Verdict Form specifically cross-referenced the Court's Instructions on defamation (<u>see</u> Doc. No. 385), which the Court has concluded were free from error.  Nothing in the Verdict Form requires a new trial.

---

[13] Defendant is correct that in accordance with the undersigned's dispositive motion procedures (Doc. No. 10), the Motion to exclude Professor Schultz's testimony was a dispositive one and should have been filed by the dispositive-motion deadline set forth in the Pretrial Scheduling Order, rather than through a Motion *in limine*.  That said, the Court perceives no prejudice from the belatedness, as Defendant had a full and fair opportunity to respond to the Motion.  (<u>See</u> Doc. No. 308.)

**CONCLUSION**

At bottom, the Court concludes Defendant received a fair trial and that the jury's verdicts were supported by substantial evidence.  Defendant is obviously disappointed in those verdicts, but her disappointment does not lay a foundation for a new trial or for judgment as a matter of law.  Having found all of Defendant's arguments wanting, and based on all the files, records, and proceedings herein, **IT IS ORDERED** that Defendant's Motion for Judgment as a Matter of Law or New Trial (Doc. No. 404) is **DENIED**.


Dated: November 25, 2014                              s/Richard H. Kyle
                                                      RICHARD H. KYLE
                                                      United States District Judge